## DETERMINATION AS TO THE CHARACTER OF A DEVISE.

Common Pleas Court of Richland County.

EDITH LAVER v. MARTIN KREITER.

Decided, April 25, 1917.

*Remainder—Devise of Life Estate to Sons—With Fee to Children· of Last Life Tenant—Creates a Contingent and Not a Vested Estate— Conveyance of Such an Estate by Quit-claim Deed Ineffectual— Restoration of Purchase. Money for Said Interest Ordered in Proceeding for Partition.*

1. Where in a will a testator devised to his two sons the equal use and enjoyment of the rents and profits of certain real estate during their lives, or during the natural life of the surviving one of them; and then, at the decease of the surviving one of them devised said real estate to the children of his said sons, surviving the last life tenant,

*Held:* That the remainder thus created was a contingent remainder, the right of enjoyment depending upon the uncertainty of survivorship among said children, and a child of either one of said sons had no alienable interest in said land until the death of the last life tenant.

2. Where, in such case, the only child of one of the sons, before the death of the last life tenant, executes and delivers a quit-claim deed, without any covenants of warranty, to a third party for a valuable consideration, said quit-claim deed creates no estoppel, and is ineffectual to convey any interest whatever in said premises; and such grantee is without title to effect a conveyance of said interest by deed of general warranty, though executed and delivered for a valuable consideration.

3. In such case, equity requires the restoration of any money paid or advanced for the execution and delivery of said quit-claim deed on its cancellation by the order of the court.

*C. H. Workman,* for plaintiff.

*H. T. Manner* and *C. H. Workman,* for defendant, Harold Laver.

*Van C. Cook,* for defendant, Martin Kreiter.

*W. R. Gifford* and *C. E. McBride,* for defendants, Fox, Boals, McClure and Zellers.

MANSFIELD, J.

Philip Laver died testate in November, 1898, seized of certain valuable real estate in this city.

By items two and three of his will he makes disposition of his real estate as follows:

Item 2. "I will and devise to my two sons, George M. Laver and Philip J. Laver, the equal use and enjoyment of the rents and profits of my real estate during their natural lives, or during the natural life of the surviving one of them to descend as hereinafter designated in Item three."

Item 3. "At the decease of my said sons George M. Laver and Philip J. Laver or the surviving one of them, I will and devise my real estate in Item 2, referred to, to the heirs of the body of my said son, namely, the children of my said son George M. Laver, the share to which he would be entitled and to the children of my said son Philip J. Laver, the share to which he would be entitled if living, and if at the decease of the surviving one of my said sons, George M. or Philip Laver, the heirs of the body of either shall have deceased, then I devise to the heirs of either so surviving their heirs and assigns said real estate in fee simple."

The two sons of the testator named in the will, namely, Philip J. Laver and George M. Laver, at the death of testator had each one child, Edith Laver being the daughter of Philip J. Laver, and Harold Laver being a son of George M. Laver.

Philip J. Laver, the father of Edith, died about the year 1908, being then about 55 years of age. George M. Laver died November 5, 1915, about 63 years of age, and at the time of his death was in the complete enjoyment of the life estate both in his own right and right of survivorship to his brother's interest to the real estate named. Harold Laver, the son of George M. Laver, at the time of his father's death was about 30 years old.

On December 2, 1912, about three years prior to the death of his father, George M. Laver, Harold Laver released and quit claimed his interest in the real estate in question to one Martin Kreiter for a valuable consideration, and on November 22, 1915, Martin Kreiter sold this interest by deed of general warranty

to Boals, Zellers and others, named as defendants in this case. The surviving life tenant, George M. Laver, died on November 5, 1915, and on November 15, 1915, Edith Laver, surviving daughter of Philip J. Laver, filed this proceeding in partition making Harold Laver, Martin Kreiter, Zellers, McClure et al, parties defendant. On hearing of the partition proceedings, partition was ordered of the premises; subsequently the property was sold in that proceeding, one-half the proceeds ordered distributed to the plaintiff, Edith Laver, and the balance held to await an order of distribution upon the issues raised by the pleadings filed by Martin Kreiter, Harold J. Laver and defendants, Boals, Zellers et al.

The question is presented in the first instance under the will of the testator, Philip Laver, Sr., whether the devise to the children of the devisees creates a contingent or vested remainder, and to determine this question involves the construction of said will, for if the interest to the children of devisees was a vested interest then an inquiry may be made further into the issues of fraud raised by the answer and cross-petition of defendant Harold J. Laver and also the question in *lis pendens,* but if such interest was simply a contingent remainder, that is, the title to the children under the will did not vest until the death of the surviving life tenant, that would determine the case for the reason that the deed from Harold Laver to Kreiter being merely a quit-claim without any covenants of warranty, no estoppel would arise to defeat his alleged claim as a tenant in common with his cousin, Edith Laver.

A vested remainder is an estate *in presenti* although to be enjoyed in the future. A contingent remainder is an estate to vest upon the happening of some future event. So in the case at bar we have the question, was there a vested remainder, the enjoyment of which was simply postponed until the happening of a future event, or was the vesting deferred until the happening of a future event.

The law favors the vesting of estates from the time of the death of the testator, unless it appears from the terms of the will that the vesting depended upon a condition precedent to its

taking effect, and rules of construction give way to intention of the testator as may be gleaned from the terms of the will. Now in the will in question, it will be observed that the testator after the decease of the life tenants does not devise to certain designated persons and their heirs, but he devises after the termination of the life estate "to the heirs of the body of my said sons," namely, "the children of my said son George M. Laver the share to which he would be entitled and to the children of my said son Philip J. Laver, the share to which he would be entitled if living, and if at the decease of the surviving one of my said sons George M. or Philip Laver, the heirs of the body of either shall have deceased, then I devise to the heirs of either so surviving their heirs and assigns said real estate in fee simple."

It is to be observed that by this language, by the words "heirs of the body of my said sons," he explicitly states what he means by that expression, namely, the children of said sons; that is, I take it that by fair construction what the testator meant in the use of the terms employed was that before the right of possession could be exercised by the children of either, they must not only survive their own father, but survive the surviving life tenant. Here is an uncertainty both as to the persons who are to take and also as to the time of enjoyment; it is not merely the postponement of enjoyment, but an uncertainty of enjoyment depending upon survivorship; that is, the children or issue of either of the life tenants had no right or enjoyment upon the death of their father, but such right hung upon a further contingency that they must survive the surviving life tenant; it was not a devise to a life tenant and at his death to his heirs, but in the estate in question the life estates were carved out and a remainder to the children of either depending upon the survivorship of the last life tenant.

It appears to the court, from any analysis of this will, that it was not the intention of the testator that the interest of the remaindermen should vest at the time of the testator's death, and that the interest to the children of either was a mere contingent interest depending upon survivorship with no certainty

as to who would take and consequently could not vest except at the time appointed by the terms of the will; that is, at the death of the last surviving life tenant. In other words, under the terms of this will before the child of either of the life tenants could take a vested interest he or she must survive the last life tenant. If this is not true, then if a child of either die before the death of the surviving life tenant, the heirs of such deceased child would take, which would practically annul the provisions of the will providing for the right of survivorship in the child or children of either life tenant who survived the last life tenant.

In *Spear* v. *Fogg*, 87 Maine, 132, the will under construction reads:

"I give to my sisters Mary S. Pecker and Frances S. Fogg in equal shares, all the rest and residue of my estate, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, have and to hold the same for and during the terms of their natural lives, and at their decease to descend to their children respectively, and to be equally divided among them or to the survivors of them."

Held that the devise created a contingent and not a vested remainder in the children of the devisees.

In the opinion of the court on page 139 is found the following language:

"If the estate were to be construed as vesting at the death of the testator, then one of the heirs might convey his share by deed, and if he died before the termination of the life estate leaving heirs his conveyance might defeat their estate, which would be contrary to the expressed provisions of the will."

While I think that perhaps the distinction between contingent and vested remainders are drawn closer in the state of Maine than in Ohio, yet the above case I believe to be sound in reason and principle and in harmony with the announcement of our Supreme Court.

In *Sinton* v. *Boyd*, 19 Ohio St., 30, it is held:

"1. In the construction of wills words of survivorship should be referred to the period appointed by the will for the payment or distribution of the subject-matter of the gift, unless a contrary intention is evinced by the language of the will.

"2. Where a testator gave all his estate to his wife for life and directed that all remaining after her death should be divided by his executors equally amongst his children, or the survivors of them, and after his decease one of the children died before the death of testator's widow, leaving a child;" held, that no interest vested in the deceased child under the will and that the grandchild of the testator was not entitled to share in the estate as one of the children or survivors among whom it was to be distributed.

In the opinion of the court, on page 35, there is a reference to the English case of *Young* v. *Robinson,* 8 Jurist (N. S.), 825, decided in the House of Lords in 1862. In that case it was held, upon the authorities as well as upon principle, to be the rule "that where there is a clause of survivorship, *prima facie* survivorship means the time at which the property comes into enjoyment, that is to say that if there be no previous life estate at the death of testator; if there be a previous life estate then at the termination of that life estate."

And on page 36, same opinion, the court announces its conclusion as to whether the interest involved in that controversy was vested and says:

"It is clear then that, during the life of the widow, no interest in this leasehold vested in the father of Kate J. Boyd. He died before the time for the distribution of the estate arrived; therefore nothing vested in him or his heir for the distribution was to be made only amongst the 'children' of the testator that might be surviving at the time mentioned in the will for the distribution."

And the case of *Sinton* v. *Boyd, supra,* was approved and followed in the case of *Barr* v. *Denney,* 79 Ohio St., 358.

The case of *Linton* v. *Laycock,* 33 Ohio St., 128, is cited as authority that the interest of Harold Laver was vested at the death of his grandfather. I do not think it fully sustains coun-

sel in that respect.  Referring to the opinion in that case at page 135 I quote:

"There is then no doubt but that the estate vested in the children of the testator at his death, unless the words 'then living or their heirs' in the clause directing the division, changes the case and makes the estate contingent.  No other indication is contained in the will of an intention to create a condition precedent to the vesting of the estate.  Nor do we think the testator so intended by this clause, for he does not thereby impose any condition of survivorship or give to his children then living any advantage thereby, in the view we take of the meaning of the words 'or their heirs.'  Those words in a sense, it is true, might refer to the living children and thus operate as a condition subsequent, divesting a child who might die before the period named.  But we do not regard that as being the meaning of the testator."

In the case at bar there is no mistaking the use of the words "imposing conditions of survivorship" by the testator; in fact, upon the reading of the whole will the court is impressed that the conditions of survivorship was the important thing that was uppermost in the mind of the testator, and that no estate was to vest except upon the conditions so imposed, and it further clearly appears by the expressed terms of the will he gives to the survivors an express advantage.

The case of *Jeffers* v. *Lampson,* 10 Ohio St., 102, is claimed as an authority to sustain the contention that Harold Laver had a vested interest at the time of making the deed to Martin Kreiter.  In the will involved in that case, the testator gave his property to his wife for life and at her death to his two sons William and Henry, to them and their assigns forever, and then provided if either of my said sons William or Henry shall happen to die before my wife, then it is my desire that the survivor at her decease shall leave the whole of the property to him and his heirs and assigns forever.  It was held that during the life of the wife the contingent interest of William was in law releasable to Henry and passed by such release.

But it will be observed that this will is radically different, as I take it, from the will involved in the case at bar.  Under

the terms of this will, there was no question of a fixed and definite interest in both William and Henry in the estate devised by their father. The contingency provided by the will simply enlarged that interest in case of the happening of the event upon which the contingency depended. But in the case at bar, the right of any interest depended upon survivorship; no interest could attach or vest in Harold Laver unless he survived the last surviving life tenant, and the will fails to give him or any of the children any estate but a contingent remainder in the real estate, all depending upon such child or children surviving the last life tenant.

So I am inclined to think that the case of *Jeffers* v. *Lampson, supra,* is not applicable to this case. I therefore hold that at the time Harold Laver made the quit-claim deed in question, he had no vested interest in the real estate involved in this controversy, and therefore that his deed of quit-claim releasing his interest to Martin Kreiter conveyed nothing to Martin Kreiter, and that as between him and Martin Kreiter and Kreiter's grantees that Harold Laver is entitled to the distribution of the funds now in the hands of the court.

It appears, however, that Martin Kreiter has paid certain debts and claims on behalf of Laver growing out of the transaction in question, and also advanced to him some money for the use of himself and wife at the time the deed was made. In equity this should be taken care of in any final distribution. It will therefore be ordered that from the funds now in the hands of the sheriff that, *first,* the costs of this proceeding first be deducted; *second,* that there be paid to Martin Kreiter the amount that he has advanced and paid on account of Harold Laver, and *third,* that the balance of the fund be turned over to Harold Laver.

Having determined the above question it is unnecessary to pass upon the other issues in the case.